IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NELSON L. ORTEGA RAMOS, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 23-791-MN |
| v. | ) ) | |
| MARTIN J. O'MALLEY Commissioner of Social Security, | ) ) ) ) ) | |
| Defendant. | ) | |

FILED

SEP 30 2024

U.S. DISTRICT COURT DISTRICT OF DELAWARE

## MEMORANDUM ORDER

Plaintiff Nelson L. Ortega Ramos ("Plaintiff") appeals from an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits. (D.I. 1). This Court has jurisdiction under 42 U.S.C. § 405(g). The parties consented to entry of final judgment by the United States Magistrate Judge pursuant to 28 U.S.C. § 636. (D.I. 19). The parties filed cross-motions for summary judgment. (D.I. 12, 15). For the following reasons, Plaintiff's motion for summary judgment is DENIED and the Commissioner's cross-motion for summary judgment is GRANTED.

I. **LEGAL STANDARD**

Courts have plenary review over the Commissioner's legal conclusions but review the Commissioner's factual findings for "substantial evidence." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And whatever the meaning of 'substantial' in other contexts, the threshold for such

evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek*, 587 U.S. at 103. In reviewing whether substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler*, 667 F.3d at 359; *see also Zirnsak v. Colvin*, 777 F.3d 607, 610–11 (3d Cir. 2014). In other words, reviewing courts must affirm the Commissioner if substantial evidence supports the Commissioner's decision, even if they would have decided the case differently.

To determine if a claimant is disabled, the Commissioner follows a five-step sequential inquiry. *See* 20 C.F.R. § 416.920(a)(4)(i)–(v). The Third Circuit has previously explained this sequential analysis, and the shifting burdens that attend each step, in detail:

> The first two steps involve threshold determinations. In step one, the Commissioner must determine whether the claimant currently is engaging in substantial gainful activity. If a claimant is found to be engaging in substantial gainful activity, the disability claim will be denied. In step two, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. If the impairment is equivalent to a listed impairment the disability claim is granted without further analysis. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. The claimant bears the burden of demonstrating an inability to return to his past relevant work. If the claimant does not meet the burden the claim is denied.
>
> If the claimant is unable to resume his former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. The Commissioner must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his or her medical impairments, age, education, past work experience, and residual

> functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled.

*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545–46 (3d Cir. 2003) (internal citations omitted). The analysis is identical whether an application seeks disability insurance benefits or supplemental security income. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004).

## II.  BACKGROUND

On August 15, 2019, Plaintiff filed for disability insurance benefits due to HIV, HPV[1], sciatica pain and low back pain with lumbar facet arthropathy, and depression, with an initial alleged onset date of March 1, 2019. (D.I. 6 (hereinafter "Tr.") at 78). Plaintiff thereafter amended his alleged onset date to December 1, 2019, adding a diagnosis from November 2019 and a changed condition from December 2019, with bipolar disorder and worsened depression and anxiety symptoms, respectively. (*Id.* at 49, 86). Plaintiff's disability claims were denied twice: initially on May 15, 2020, and upon reconsideration on July 7, 2021. (*Id.* at 78–94). At the initial level of administrative review, State agency psychological consultant Christopher King, Psy.D., opined that Plaintiff had no severe mental impairments and no limitations. (*Id.* at 80–81). At the reconsideration level, State agency psychological consultant Alex Siegel, Ph.D., opined, among other things, that Plaintiff could perform simple and routine tasks in a stable environment that did not require close interactions with others. (*Id.* at 93).

Following the denials, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 113–14). ALJ NaKeisha Blount held a hearing regarding Plaintiff's petition on March 1, 2022. (*Id.* at 42–77). Plaintiff testified at the hearing, as did a vocational expert that was

---

[1]  The transcript describes Mr. Ortega's disabilities as including "HVP", which I understand to be a clerical error and the correct abbreviation of the condition, "human papillomavirus," to be HPV. (D.I. 6 at 78, 87).

retained and compensated by the Commissioner. (*Id.* at 43–77). The ALJ also considered opinions from Plaintiff's therapist, Lawrence Yurrow, and Plaintiff's psychiatrist, Dr. Antoinette Ducrest, both of whom opined that Plaintiff was disabled by his psychiatric symptoms and required a number of restrictions rendering him unable to work. (*Id.* at 31–32, 975, 1211). The ALJ also considered the State agency findings from Plaintiff's initial disability determination, as well as those at the reconsideration level. (*Id.* at 33). With respect the opinions by Drs. King and Siegal, the ALJ evaluated them against the remaining record evidence and found that they did not sufficiently credit Plaintiff's condition and that they did not recommend sufficient limitations. Conversely, with respect to the opinions and recommendations by Mr. Yurrow and Dr. Ducrest, the ALJ determined that their more restrictive opinions were inconsistent with objective findings in behavioral health treatment records. (*Id.* at 32).

After conducting the standard five-step analysis, the ALJ denied Plaintiff's request for benefits. (*Id.* at 22–35). She decided in Plaintiff's favor at steps one and two, finding that Plaintiff was not engaged in substantial gainful activity and that he had the following severe impairments: "obesity, degenerative disc disease, sleep apnea, asthma, obesity hypoventilations [sic] syndrome, human immunodeficiency virus, depressive disorder or mixed anxiety and depressive disorder, generalized anxiety disorder, posttraumatic stress disorder (PTSD) and agoraphobia with panic disorder." (*Id.* at 22–24). But at step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination with one another, met "or medically equaled" the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526. (*Id.* at 24–26). At steps four and five, the ALJ considered Plaintiff's residual functioning capacity ("RFC") and found that, while Plaintiff could not be expected to return to his past work, there were sufficient jobs with duties consistent with his limitations available in the national economy. (*Id.* at 33–35).

Plaintiff filed this action on July 21, 2023 (D.I. 2) and a motion for summary judgment on November 2, 2023 (D.I. 12). The Commissioner filed a cross-motion for summary judgment on December 4, 2023. (D.I. 15). Plaintiff also filed a reply brief on December 18, 2023. (D.I. 17).

Because I am writing for the parties who are familiar with the facts and procedural history of this case, I only discuss the legal issues presented to me and the material facts related thereto.

## III. DISCUSSION

Plaintiff makes two arguments in support of his challenge to the ALJ's determination that he is not disabled.[2] First, Plaintiff argues that the ALJ failed to consider all of his credibly established mental health limitations in assessing his RFC and reaching the conclusion that he could work at step five of the analysis. (D.I. 13 at 15–18). Second, Plaintiff asserts that the ALJ failed to properly assess his capacity for sustained work. (*Id.* at 18–20). I address each argument in turn below.

### a. Whether the ALJ Failed to Consider Plaintiff's Mental Health Limitations in Assessing Plaintiff's RFC.

Plaintiff argues that the ALJ erred by failing to include "credibly established limitations" in the RFC that reflect Plaintiff's depressive disorder, mixed anxiety, generalized anxiety disorder, PTSD, and agoraphobia with panic disorder. (D.I. 13 at 15; D.I. 17 at 3). Specifically, Plaintiff argues that despite acknowledging that he, on occasion, appeared disheveled and had difficulty with basic standards of neatness and cleanliness, and that he had episodes of anger and frustration, the ALJ failed to include any limitations in the RFC to address these issues. (*Id.*). According to Plaintiff, this failure is reversible error. (*Id.* at 15, 18). I disagree.

---

[2] Plaintiff originally alleged a number of impairments, but he does not raise the ALJ's determination regarding his alleged physical ailments on appeal (D.I. 13 at 14–20). Thus, his appeal, and this Memorandum Order, are limited to the issues he raised regarding his mental impairments.

5

An applicant's RFC is the most that they can do on a regular and continuing basis despite any mental or physical limitations resulting from their impairments. 20 C.F.R. §§ 404.154(a)-(c). The ALJ is responsible for making the "ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361. Thus, when evaluating the medical opinions before them, the ALJ has discretion in choosing whom they want to credit, but they may not "reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Stated differently, medical opinions and prior administrative medical findings are not entitled to deference or any specific evidentiary weight as a general matter. *See* 20 C.F.R. § 404.1520c(a) ("[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)"). An ALJ is "free to accept some medical evidence and reject other evidence, provided that he provides an explanation for discrediting the rejected evidence." *Zirnsak*, 777, F.3d at 614. Additionally, the ALJ is required to provide a written explanation of how "[they] considered the supportability and consistency factors" for a medical opinion.[3] 20 C.F.R. § 404.1520c(b)(2). While the ALJ is required to consider a medical source's relationship with the claimant, and other factors that tend to support or contradict the medical opinion or administrative medical finding, they need not explicitly discuss these factors and considerations. *Id.*

In support of Plaintiff's argument that the ALJ erred by omitting limitations related to his inability to adhere to standards of neatness and cleanliness and work pace, Plaintiff relies on *Stuessi v. Colvin*, C.A. No. 16-3547 (BRM), 2018 WL 5630764 (D.N.J. Oct. 31, 2018). In *Stuessi*, as here, the plaintiff struggled to adhere to general standards of workplace neatness and cleanliness.

---

[3]     My analysis of the ALJ's written explanation of supportability and consistency, which applies equally to both of Plaintiff's arguments on appeal, is set forth on pages 8–10 herein.

6

But in *Stuessi*, the ALJ only addressed a portion of the expert witnesses' reports without explanation as to why other limitations, like the plaintiff's inability to adhere to standards of neatness, were not identified or given weight. *Id.* at *6. Conversely, the ALJ here squarely addressed the medical opinions and explained why she accepted some and rejected others. (Tr. at 26–30, 31–35). Indeed, the ALJ considered and rejected the prior administrative medical findings of Drs. King and Siegal because they did not adequately reflect Plaintiff's level of anger and frustration or his disheveled appearance. (*Id.* at 33). For Dr. King, the ALJ rejected the opinion because she found that it was not consistent with other medical records that supported a finding of more severe mental impairments. (*Id.*). Likewise, the ALJ rejected Dr. Siegal's opinion because the RFC limitations are "more specific than Dr. Siegel's overall findings." (*Id.*). Conversely, the ALJ found that the more restrictive limitations opined by Mr. Yurrow and Dr. Ducrest were unwarranted because they were inconsistent with objective findings in behavioral health treatment records. (*Id.* at 32).

Indeed, the ALJ provided a robust discussion of her findings, explaining that although Plaintiff appeared disheveled at times, the greater weight of evidence demonstrated that Plaintiff was capable of, and was more often, dressing appropriately. (*Id.* at 25, 29). She also considered Plaintiff's occasional demonstrations of heightened anger but determined that his treatment records revealed no difficulty interacting with his providers. (*Id.* at 24–25, 29, 32–33). And she considered Plaintiff's claim that he has difficulty leaving the house but determined that he was still able to leave the house to shop, obtain basic personal care, attend appointments, and entertain friends at his home. (*Id.* at 25, 30). Thus, unlike in *Stuessi*, the ALJ did not fail to identify or assign weight to the experts' assessments of Plaintiff's limitations.

Through her review and evaluation of the State agency experts and Plaintiff's treating providers, the ALJ demonstrated compliance with 20 C.F.R. § 404.145(e): she considered the evidence of Plaintiff's mental impairments and alleged symptoms that were a part of his medical record, and explained why the limitations she included in the RFC were more consistent with Plaintiff's mental health symptoms. Any finding by me to the contrary would be to improperly substitute my personal assessment of the facts for the ALJ's and require me to re-weigh the evidence.[4]

### b. Whether the ALJ Erred in Failing to Assess Plaintiff's Capacity for Sustained Work.

I now turn to Plaintiff's argument that the ALJ failed to properly assess his capacity for sustained work. This argument, in some ways, echoes Plaintiff's first. Specifically, Plaintiff argues that the ALJ did not clearly explain her reasons for rejecting medical opinions that concluded that Plaintiff's conditions would result excessive absenteeism at work. (*Id.* at 18). Plaintiff argues that this is reversible error. (*Id.* at 18–19). I disagree.

---

[4] In his opening brief, Plaintiff's first argument is titled "The ALJ's Hypothetical Failed to Consider Mr. Ortega's Credibly Established Mental Health Limitations." (D.I. 13 at 15). The argument included in that section, however, focuses on the ALJ's failure to include limitations in the RFC, arguing that the ALJ was required to explain her findings and did not. (*Id.* at 15–17). Plaintiff does not advance an argument that the hypothetical was flawed or, even if his brief could charitably be read to do so, Plaintiff does not say how or why the hypothetical was flawed. As a result, any argument seeking remand based on a flawed hypothetical is waived for failure to assert it in the Opening Brief. *See Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief . . ."); *see also Cohen v. Cohen,* C.A. No. 19-1219-MN, 2022 WL 952842 at *4 (D. Del. Mar. 30, 2022) ("A reply brief . . . is not the appropriate time to raise a new argument"). Even if I were to consider a flawed hypothetical argument, however, I would find it unpersuasive. The ALJ stated that the hypothetical individual would "only occasionally work in tandem or directly with, or in group work with others, and occasionally interact with the public." (Tr. at 69-70). Thus, the ALJ adequately captured Plaintiff's mental limitations in her hypothetical description to the vocational expert. *Culp v. Colvin*, C.A. No. 15-294-LPS, 2016 WL 5416696, at *9 (D. Del. Sept. 27, 2016). Moreover, the ALJ sufficiently analyzed record evidence to determine in her RFC assessment that the limitations requested by Plaintiff were not supported. (*Id.* at 32–33).

The ALJ acknowledged the medical opinions regarding excessive absenteeism issues—missing more than four days of work per month—but she was under no obligation to give these opinions any evidentiary weight. *See* 20 C.F.R. § 1520c(a) (The SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Rather than rely exclusively on medical opinions, either from the plaintiff or the State, it is the ALJ's responsibility to consider all relevant evidence in the record to determine an applicant's RFC. *See Chandler*, 667 F.3d at 361.

When it comes to medical evidence, the regulations provide several factors that an ALJ must consider, but the two most important factors are supportability and consistency. *See* 20 C.F.R. § 404.1520c(a). Supportability refers to the extent to which an opinion is persuasive based on the relevance of the objective medical evidence and supporting explanations presented by the medical source offering the opinion. *Id.* § 404.1520c(c)(1). Consistency refers to an opinion's consistency with evidence from other sources in the record, both medical and nonmedical. *Id.* § 404.1520c(c)(2). Regardless of the other factors, an ALJ must specifically set forth her analysis of supportability and consistency in determining whether medical opinions or findings are persuasive. *Id.* § 404.1520c(b)(2). While medical opinions may be found to be persuasive by the ALJ, they may just as easily be given no evidentiary weight. *See* 20 C.F.R. § 1520c(a).

The ALJ determined that the overly restrictive limitations proposed by Plaintiff's medical experts were inconsistent with both the State agency consultants and objective medical evidence contained in the record. (Tr. at 32–33). The objective medical evidence included exam findings that Plaintiff showed "normal speech, normal memory, generally intact attention, logical and goal-directed thought processed, and non-psychotic thought content." (*Id.*). Plaintiff often denied both

suicidal and homicidal ideations, and only occasionally "demonstrated a higher than baseline anger related to PTSD and has a low frustration tolerance but that he was cooperative." (*Id.*). The ALJ noted that Plaintiff was reported to be cooperative despite these reports, and that Plaintiff had never required inpatient hospitalization. (*Id.* at 25, 29, 32–33). On supportability, similarly, the ALJ determined that the limitations proposed by Plaintiff's medical experts were at odds with the objective examination findings in Plaintiff's medical records. (*Id.* at 31–33).

Thus, the ALJ's explanation and analysis of the medical opinions regarding Plaintiff's mental health limitations (*Id.* at 32) shows that she fully considered all relevant evidence in the record. *Zirnsak*, 777 F.3d at 614. In reaching her decision regarding Plaintiff's limitations and his RFC, the ALJ cited extensively to the medical record before her, relying upon both the supportability and consistency of the records. I find that her reliance upon the evidence contained in the record meets the substantial evidence standard required by 42 U.S.C. § 405(g) and 20 C.F.R. § 404.1520c(a). *See also Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment (D.I. 12) is DENIED and the Commissioner's cross-motion (D.I. 15) is GRANTED.

\* \* \*

SO ORDERED this 30th day of September, 2024.

Laura D. Hatcher
United States Magistrate Judge